GUILLERMO PETTERSON, demandante y apelante, *v.* JUAN RODENA y MIGUEL RUIZ SOLER, demandados y apelados.

No. 4089.—*Visto:* Febrero 10, 1927. *Resuelto:* Febrero 18, 1927.

1. APELACIÓN Y ERROR—PRESENTACIÓN Y RESERVA EN LA CORTE INFERIOR DE LOS FUNDAMENTOS DE REVISIÓN — EXCEPCIONES — RESOLUCIONES RESPECTO A LA ADMISIÓN O EXCLUSIÓN DE PRUEBAS—ADMISIÓN DE PRUEBAS.—Objetada en apelación la admisión de prueba sin haberse anotado excepción alguna a la resolución de la corte admitiéndola, la objeción no exige seria consideración.

2. CONTRATOS—CUMPLIMIENTO O QUEBRANTAMIENTO—DE LA EVIDENCIA EN GENERAL—PRUEBA ADMISIBLE—CIRCUNSTANCIAS EXISTENTES A LA FECHA DEL CONTRATO.—En acción en cumplimiento de contrato no es error el admitir prueba para ayudar la corte en la apreciación de la prueba en general y demostrar circunstancias existentes a la fecha del alegado contrato así como su cumplimiento por el demandante, especialmente cuando dicha prueba corrobora al apelante en cuanto a la situación que le impulsó a entrar en dicho contrato, y por su naturaleza acumulativa difícilmente podría considerarse suficiente como motivo de revocación.

SENTENCIA de *Domingo Sepúlveda*, J. (San Juan), declarando sin lugar la demanda, con costas. *Confirmada.*

*B. F. Pacheco,* abogado del apelante; *R. Castro Fernández,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

El demandante, un panadero, presentó demanda contra otros dos dueños de panadería, uno de ellos presidente de una asociación de tahoneros, para recobrar una cantidad de dinero que alegaba serle adeudada por los demandados de acuerdo con los términos de un convenio verbal, según

el cual el demandante había sido inducido a destruir el horno de su panadería.

La corte inferior, después de celebrado el juicio sobre los méritos del caso, declaró sin lugar la demanda, por las siguientes razones:

"La evidencia testifical del demandante tendió a probar lo siguiente:

"Que el día 5 de noviembre de 1924, fueron los demandados Juan Rodena y Miguel Ruiz Soler a la propia casa del demandante Guillermo Petterson y que entonces y allí se convino, *de palabra,* entre el demandante y los demandados que el demandante destruyera el horno y la panadería mencionados en la demanda y que en cambio los demandados Rodena y Ruiz Soler le pagarían al demandante Petterson la suma de setecientos dólares y que en consecuencia de lo convenido se destruyó el horno y hasta la fecha no le han pagado al demandante los setecientos dólares.

"Los demandados Juan Rodena y Miguel Ruiz Soler declaran negando en absoluto haber estado el día 5 de noviembre de 1924, ni antes ni después de esa fecha, en la casa del demandante, y negando especialmente haber verificado el referido contrato de destrucción del horno con el demandante.

"El testigo Juan Rodena (demandado), declara entre otras cosas las siguientes:

"Que él tenía arrendada la panadería, incluyendo el horno, por la suma de cincuenta dólares mensuales; que un día llegó Petterson donde el testigo diciéndole que iban a rematar el edificio y que por tanto iba a rescindir el arrendamiento, y efectivamente, dicho arrendamiento quedó entonces rescindido. Y declara además dicho testigo, que el horno de dicha panadería sólo tendría un valor de ciento cincuenta dólares.

"El demandante Petterson declara: que el tal contrato de destrucción del horno se hizo *de palabra,* sin mediar escrito de ninguna clase. También declara el demandante Petterson, que el horno estaba en el solar que fué rematado en pública subasta y que dicho solar es hoy de otra persona distinta del demandado, y que algunos meses después el demandante Petterson reconstruyó el horno y la panadería en el mismo sitio que estaba entonces.

"En este caso existe un conflicto de evidencia entre las declaraciones de los testigos del demandante y las declaraciones de los demandados Rodena y Ruiz Soler, y la corte, resolviéndolo, declara

que no encuentra satisfactoriamente probados los hechos de la demanda por las razones siguientes:

"Porque de acuerdo con el artículo 162 de la Ley de Evidencia, el tribunal o jurado no está obligado a decidir de conformidad con las declaraciones de cualquier número de testigos que no llevaran a su ánimo la convicción contra un número menor, o una presunción u otra evidencia que le convenciere.

"Y en este caso la corte no puede comprender qué interés podían tener los demandados Rodena y Ruiz Soler en que el demandante destruyera un horno en una propiedad que se iba a rematar como efectivamente se remató, en el pleito ejecutivo hipotecario No. 1163, cuya demanda fué radicada el día 26 del mismo mes de noviembre de 1924.

"Otro hecho que llama la atención a la corte, es que tratándose de un contrato se hubiese celebrado simplemente *de palabra* y no se hubiese otorgado ni siquiera un simple pagaré por los demandados a favor del demandante Petterson. Y además la corte ha tomado en consideración la sana advertencia del artículo 1216 del Código Civil que lee como sigue:

" 'La fuerza probatoria de las declaraciones de los testigos será apreciada por los tribunales conforme a lo establecido en la Ley de Enjuiciamiento Civil, (hoy ley de evidencia); cuidando de evitar que por la simple coincidencia de algunos testimonios, a menos que su veracidad sea evidente, queden definitivamente resueltos los negocios en que de ordinario suelen intervenir escrituras, documentos privados o algún principio de prueba por escrito.''.

El señalamiento de errores especifica que:

"1.—La Corte de Distrito erró al admitir y darle valor probatorio, con objeción del demandante, al expediente del caso civil No. 1163 sobre Procedimiento Ejecutivo de Miguel Contreras Puig contra Guillermo Petterson.

"2.—La Corte de Distrito apreció de tal manera la prueba, que incurrió en manifiesto error.

"3.—La Corte erró por infracción del Art. 1216 del Código Civil e indebida aplicación del Art. 162 de la Ley de Evidencia.''

[1, 2] Al terminar los demandados de practicar su prueba testifical ocurrió el siguiente incidente:

"Abogado de los demandados: Esa es nuestra prueba, señor: Ahora presentamos en evidencia el ejecutivo hipotecario No. 1163

de Miguel Contreras Puig vs. Guillermo Petterson para probar que en la fecha en que se estaba destruyendo el horno era parte de una finca que estaba en un ejecutivo hipotecario ante esta Honorable Corte.

"Abogado del demandante: En realidad yo pensaba hacerlo prueba mía, pero ahora veo que es inmaterial al caso porque aparece que la fecha de la demanda fué en 25 de noviembre del 24 y el contrato que nos ocupa fué en 5 de noviembre del 1924.

"Juez: La Corte admite el expediente para darle el valor que tenga en conjunto con el resto de la prueba. Se marca Ex. A del demandado.

"Abogado de los demandados: Ese es nuestro caso."

Evidentemente, una objeción hecha en esta forma, sin anotar excepción a la resolución de la corte, no exige seria consideración. Es igualmente claro que el expediente en cuestión fué ofrecido para ayudar a la corte en la apreciación de la prueba, y que no fué impropio que se permitiera que los demandados demostraran en esa forma que estaba por entablarse el procedimiento ejecutivo hipotecario cuando se hizo el convenio verbal, así como el cumplimiento por parte del demandante de la obligación impuéstale por tal contrato.

Además, el mismo demandante, como primer testigo, comenzó su declaración explicando que en octubre de 1925 se le notificó del proyectado procedimiento ejecutivo, y por primera vez llamó la atención de los demandados hacia la cuestión de reunir el dinero necesario para evitar este desastre inminente. Después este testigo en repetidas ocasiones se refirió en su declaración al hecho de que iba a ejecutarse la hipoteca. Esa circunstancia parece haber predominado en la mente del demandante como un distintivo sobresaliente de la situación que lo impulsó a entrar en el alegado convenio con los demandados. Se desprende que la presentación como prueba del expediente del procedimiento ejecutivo a lo sumo meramente corroboraba las declaraciones ya hechas por el demandante; y por la naturaleza acu-

mulativa de la prueba en cuestión, difícilmente podría ser considerada como suficiente fundamento para la revocación.

[2] El extracto que hemos hecho anteriormente de la opinión dictada por el juez sentenciador es suficiente para indicar que si la prueba del demandante era cierta, entonces la de los demandados era enteramente falsa, y vice-versa. La corte inferior se vió obligada a determinar entre las dos versiones contradictorias la verdad de los hechos alegados en la demanda, y después de un examen cuidadoso de toda la prueba no encontramos que se haya cometido error alguno que justifique la revocación ni en la conclusión a que llegó el juez de distrito ni en los razonamientos por él expuestos en apoyo de la misma.

*Debe confirmarse la sentencia apelada.*